IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-01092-RPM

SCOTTSDALE INSURANCE COMPANY,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

    The central issue in this insurance dispute is whether Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is obligated to reimburse Scottsdale Insurance Company ("Scottsdale") for a portion of the $4.35 million that Scottsdale contributed to the settlement of an underlying lawsuit against Northwest Construction Company ("Northwest" or "the insured").

    Diversity of citizenship provides the basis for federal jurisdiction. Texas law governs analysis of the Scottsdale and National Union insurance policies.

    The underlying lawsuit involved the construction of a 507-unit apartment complex in Arapahoe County, Colorado, known as the Coyote Ranch Apartments ("the Project"). The Project consisted of 27 buildings, constructed over a three-year period from 2001 to 2004. Simpson Cherry Creek Limited Partnership ("Simpson") owned the Project. Northwest and a

related entity, Coyote Ranch Contractors, L.L.C., served as the general contractor and/or construction manager for the Project.

During construction of the Project, numerous defects became apparent. Repairs began in 2002.

In 2003, Simpson filed an action against Northwest and others in the District Court for Arapahoe County, Colorado, alleging claims of negligence and breach of contract arising from allegedly defective design and/or construction. Simpson sought to recover more than $22 million for various defects, including defects in the asphalt paving, breezeways, decks, building drainage, plumbing, pool deck, retaining walls, slider doors, stone, stucco, windows, movement of buildings related to the soil quality, and repairs to the original asphalt paving.

During the time that Northwest worked on the Project, Northwest was insured under policies issued by several carriers.

For the period from April 1, 2001 through April 1, 2004, CNA provided primary insurance under Transcontinental Commercial General Liability Policy No. C2048952022, effective April 1, 2001 to April 1, 2003, and Valley Forge Commercial General Liability Policy No. C2 48952022, effective April 1, 2003 to April 1, 2004. The limits of each of these CNA policies are $1 million each occurrence; $2 million products-completed operations aggregate, and $2 million general aggregate. (Scheduling Order at 6-7; Def's Ex E; Pl.'s resp. at 3-4).[1]

---

[1] Transcontinental and Valley Forge are CNA companies.

For the period from April 1, 2002, through April 1, 2003, Scottsdale provided umbrella coverage under Umbrella Policy No. UMS0010907, with limits of $10 million (Scheduling Order at 6-7; Pl's resp. at 3-4).

For the period from April 1, 2003 through April 1, 2004, National Union provided umbrella coverage under Umbrella Policy No. BE 2987582, effective April 1, 2003 to April 1, 2004, to C.D. Henderson, Inc., also naming Northwest as an insured, with limits of $5 million. (Scheduling Order at 6-7; Def.'s Ex. I; Pl.'s resp. at 3-4).

For the period from April 1, 2004 through April 1, 2005, American Zurich Insurance Company ("Zurich") provided primary coverage under Commercial General Liability Policy No. CPO 3729259-00, with limits of $1 million any one occurrence; $2 million products-completed operations aggregate, and $2 million general aggregate.  (Scheduling Order at 6-7; Def.'s Ex. C; Pl.'s resp. at 3-4).

For the period from April 1, 2004 through April 1, 2005, National Union provided umbrella coverage under Umbrella Policy No. BE 1647719, effective April 1, 2004 to April 1, 2005, to C.D. Henderson, Inc., also naming Northwest as an insured, with limits of $10 million. (Scheduling Order at 6-7; Def.'s Ex. J; Pl.'s resp. at 3-4).

CNA provided Northwest with a defense of the *Simpson* action, pursuant to a full reservation of rights.  (*See* Def.'s Ex. H (dkt. #49-8), Complaint for Declaratory Judgment in *Transcontinental Insurance Company et al. v. Northwest Construction Company, Inc. et al.*, Civil Action No. 07-cv-0673N, in the United States District Court for the Northern District of Texas).

In 2007, Transcontinental and Valley Forge commenced an action for declaratory relief against Northwest and Coyote Ranch in the United States District Court for the Northern District of Texas, seeking determinations that CNA had no obligation to defend or indemnify Northwest or Coyote Ranch for the losses alleged in the *Simpson* action (the "Texas Declaratory Judgment Action").

In 2008, the *Simpson* action was settled for $8.5 million. The settlement was funded by CNA, Scottsdale and Zurich. CNA contributed $4 million. Scottsdale contributed $4,350,000. Zurich contributed $75,000, and Northwest contributed $75,000. National Union did not contribute to the settlement. Scottsdale and CNA funded Northwest's $75,000 contribution to the *Simpson* settlement by a loan, which Northwest has no obligation to repay. In return for the loan, Northwest assigned any claims it might have against National Union to Scottsdale and CNA.

In a related agreement, Scottsdale agreed to pay $500,000 to CNA to facilitate resolution of the coverage disputes that were the subject of the Texas Declaratory Judgment Action. Those disputes involved both the CNA/Transcontinental and the CNA/Valley Forge policy.

On May 5, 2010, Scottsdale commenced this action, seeking a declaration that National Union is liable to Scottsdale for at least $2,283,911 of the funds that Scottsdale paid to resolve the *Simpson* action. In an amended complaint, Scottsdale alleges four claims for relief: (1) declaratory judgment regarding coverage; (2) equitable contribution; (3) contractual subrogation, and (4) equitable subrogation. National Union answered, denied liability and asserted nineteen defenses.

On June 29, 2012, National Union moved for summary judgment of dismissal, arguing that Scottsdale cannot show that the primary insurance policies underlying the National Union umbrella policies have been fully exhausted.

The parties agree that exhaustion is required but dispute whether it is horizontal or vertical exhaustion that applies to the facts of this case. That argument does not matter because it is undisputed that there has been no horizontal exhaustion and, for the reasons set forth below, Scottsdale has not met its burden of showing vertical exhaustion.

Scottsdale concedes that vertical exhaustion has not been satisfied with respect to the 04-05 National Union Policy. (*See* Scottsdale resp. at p.1, stating "Scottsdale does not seeking [sic] reimbursement for monies from National Union for National Union's policy in effect for the 2004-2005 policy period.")

The question is whether there has been exhaustion of the CNA/Valley Forge policy which underlies the 03-04 National Union umbrella policy.

National Union argues that Scottsdale's $500,000 payment to CNA precludes Scottsdale from being able to show that the policy limits under the Valley Forge policy have been fully exhausted. National Union characterizes the $500,000 as replenishment of policy limits of the CNA policies involved in the Texas Declaratory Judgment Action, including the Valley Forge policy.

Scottsdale contends that the $500,000 payment applied to only the 2002-2003 CNA/Transcontinental policy. In support of that factual contention, Scottsdale cites deposition testimony of Stephanie Petras, a Scottsdale representative who participated in the settlement negotiations. Petras testified as follows:

> Q: ... But just so that we're clear, the – the – when you're talking about the declaratory judgment action that CNA had filed, it wasn't just on the '02, '03 policy.
>
> A: I understand that. But our risk and our agreement to resolve the issue was on the – was based on the '02, '03 residential exclusion because that's where Scottsdale's policy sat.

(Pl.'s Ex. 2, Petras dep. 5:15 - 22).

This evidence does not satisfy Scottsdale's evidentiary burden with respect to the exhaustion requirement. The Texas Declaratory Judgment Action involved both the Transcontinental and Valley Forge policies. Scottsdale's pecuniary interest in the outcome of the Texas Declaratory Judgment action may have arisen primarily from Scottsdale's exposure for the 2002-2003 period, but that factor does not control allocation of the $500,000. The relevant factual question is how CNA allocated the $500,000, and Scottsdale has not presented evidence on that subject. Accordingly, Scottsdale's response lacks evidentiary support necessary to preclude summary judgment on the question of vertical exhaustion.

This ruling renders moot the plaintiff's motion for partial summary judgment (#40) and the defendant's motion to strike the expert opinion of Jack Hunn (#59).

Based on the foregoing, it is

ORDERED that the defendant's motion for summary judgment is granted. The clerk shall enter a final judgment dismissing all of the plaintiff's claims and this civil action with an award of defendant's costs.

Dated: December 3, 2012

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge